NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM B. ABBOTT, also            :
known as JACK MYERS,               :    Civil Action No. 06-5238 (RMB)
                                   :
            Plaintiff,             :
                                   :
       v.                          :    **OPINION**
                                   :
CAMDEN COUNTY BOARD OF             :
FREEHOLDERS, et al.,               :
                                   :
            Defendants.            :

**APPEARANCES:**

        WILLIAM B. ABBOTT, Plaintiff pro se
        GJ-1439
        State Correctional Institution
        Box 9999
        La Belle, Pennsylvania 15450-0999

**BUMB**, District Judge

        This matter comes before the Court on application of

plaintiff William B. Abbott, also known as Jack Myers, currently

confined at the State Correctional Institution in La Belle,

Pennsylvania, to amend his Complaint to add new claims and

defendants.  However, plaintiff's Complaint had been dismissed by

this Court, by Opinion and Order filed on November 14, 2006.  It

would appear that plaintiff's motion to amend his Complaint was

sent to this Court before he received notice of the November 14,

2006 Opinion and Order.  Therefore, the Court will construe

plaintiff's application as a motion to re-open this matter to

Dockets.Justia.com

assert new claims against new defendants, and will grant the application to re-open this matter and allow plaintiff to amend his Complaint.[1]

At this time, the Court must review the amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice for failure to state a claim.

## I.  BACKGROUND

Plaintiff's amended Complaint asserts a civil rights action against defendants, Sgt. J. Connors, Sgt. David L. Smith (Badge No. 55), Officer Crowder, and Officer Johnson at the Camden County Correctional Facility ("CCCF").  (Amended Complaint at ¶ 53).  Plaintiff was detained at CCCF pursuant to an interstate detainer agreement with respect to pending charges in the State of New Jersey.  He is a convicted state prisoner, currently

---

[1]  Plaintiff's initial Complaint was dismissed without prejudice to plaintiff bringing a new action in the future, to the extent that he may be able to allege facts to show a combination of serious hardships or other deprivations of constitutional dimension that might constitute punishment without legitimate reason for a longer and more substantial period of time.  See this Court's November 14, 2006 Opinion, p. 10 fn. 2. The Court will construe the amended Complaint submitted by plaintiff here as his attempt to file a "new" action accordingly.

serving a prison sentence in the State of Pennsylvania.  In his Complaint, plaintiff alleges that his conditions of confinement at CCCF violate his constitutional rights.

Plaintiff complains that, on September 9, 2006, a fourth inmate was assigned to the cell where plaintiff was housed.  He states that the cell was designed for one inmate.  He filed a grievance about this overcrowded condition on September 9, 2006 and September 11, 2006.  On September 11, 2006, water from the nearby inmate shower came into plaintiff's cell.  Plaintiff complained that day, but nothing was allegedly done.  (Am. Compl., ¶¶ 55-57).

On September 12, 2006, a female correctional officer told plaintiff that his grievances would be investigated.  Plaintiff claims that no action has been taken on his grievances.  (Am. Compl., ¶ 57).[2]  On September 14, plaintiff alleges that defendant, Sgt. Connors, served food trays from an unsanitary area and inmate workers did not have proper food serving gear. (Am. Compl., ¶ 59).  On September 18, 2006, plaintiff was moved to another part of CCCF.  (Am. Compl., ¶ 60).

On September 25, 2006, while working his kitchen shift, plaintiff began to have chest pains.  The officer on duty told plaintiff to report to the prison hospital.  The doctor on duty

---

[2]  Plaintiff also states that he complained about the overcrowded conditions at CCCF while he was in state court on sentencing in a criminal matter.  (Am. Compl., ¶ 54).

ordered that plaintiff be taken to an off-site hospital for further observation. On September 28, 2006, plaintiff was discharged from the hospital and returned to CCCF. He was placed in the prison hospital ward where he slept on a thin mattress in a "boat" on the floor. He was released from the prison hospital ward on September 29, 2006 and assigned to a cell #56 with three other inmates. (Am. Compl., ¶¶ 61-63).

Another inmate told plaintiff that cell #51 had only two inmates, so plaintiff went to that cell and placed his mattress on the floor. On September 30, 2006, C/O Foster found plaintiff in cell #51 and told him to move back to his assigned cell #56. Plaintiff asked to speak to the lieutenant on duty and explained to him and defendant, Sgt. Smith, that he had just gotten out of the hospital and wanted to know why he was being treated this way. Both officers told plaintiff he had to comply with the cell assignment order. Later that day, when CO Foster was on rounds he found plaintiff in the wrong cell again. He told plaintiff to return to his assigned cell and plaintiff refused. Based on plaintiff's refusal to comply with orders, he was placed in disciplinary lock-up. (Am. Compl., ¶¶ 63-65).

Plaintiff had a disciplinary hearing on October 2, 2006 where he complained about the overcrowded conditions. Plaintiff was found guilty on the disciplinary charge and was sanctioned with time served (September 30 to October 2, 2006). He was

released from the lock-up unit and sent to another cell.  He
returned to state prison in Pennsylvania on October 3, 2006.
(Am. Compl., ¶¶ 66-68).

Plaintiff seeks more than $700,000.00 in compensatory and
punitive damages.  He also seeks injunctive relief, demanding an
investigation of the conditions and a decree to change the
overcrowded and unsanitary conditions at CCCF.  (Am. Compl., ¶¶
71-79).  Because plaintiff is no longer confined at CCCF, his
claims for injunctive relief will be dismissed as moot.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-
134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),
requires a district court to review a complaint in a civil action
in which a prisoner is proceeding in forma pauperis or seeks
redress against a governmental employee or entity.  The Court is
required to identify cognizable claims and to sua sponte dismiss
any claim that is frivolous, malicious, fails to state a claim
upon which relief may be granted, or seeks monetary relief from a
defendant who is immune from such relief.  28 U.S.C. §§
1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

5

"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff." <u>Morse v. Lower
Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court
need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions"
or "legal conclusions."  <u>Id.</u>

    A complaint is frivolous if it "lacks an arguable basis
either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  <u>Deutsch v. United
States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

    A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v.
Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Milhouse v. Carlson</u>, 652 F.2d
371, 373 (3d Cir. 1981).  However, where a complaint can be
remedied by an amendment, a district court may not dismiss the
complaint with prejudice, but must permit the amendment.  <u>Denton
v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery

was not required to be dismissed for failure to state a claim;

district court should permit a curative amendment before

dismissing a complaint, unless an amendment would be futile or

inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,

108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.

§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.

Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

Plaintiff brings this amended complaint pursuant to 42

U.S.C. § 1983 alleging violations of his civil rights guaranteed

under the United States Constitution.  Section 1983 provides in

relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994). There is no question that the named defendants in the
amended complaint are persons acting under color of state law.

IV.  ANALYSIS

It would appear that plaintiff is asserting unconstitutional
conditions of confinement claim based on an alleged deprivation
of liberty without due process of law, because he was confined at
CCCF on an interstate detainer subject to criminal charges
pending in the State of New Jersey.

A liberty interest protected by the Due Process Clause may
arise from either of two sources:  the Due Process Clause itself
or state law.  See Asquith v. Department of Corrections, 186 F.3d
407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty
interests firmly grounded in the Due Process Clause of the
Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341
n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of
whether such a detainee has been deprived of liberty without due
process is governed by the standards set out by the Supreme Court
in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at
341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of
> law. ...

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility. "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial." 441 U.S. at 540. Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives. 441 U.S.

9

at 539 n.20.  Nor are grossly exaggerated responses to genuine
security considerations.  Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under
the circumstances presented in that case did not constitute
punishment, and therefore, did not violate the pretrial
detainees' due process rights.  Id., at 541-43.  The Court
further noted that no due process violation occurred where
pretrial detainees were detained for generally less than 60 days.
However, the Court cautioned that: "confining a given number of
people in a given amount of space in such a manner as to cause
them to endure genuine privation and hardship over an extended
period of time might raise serious questions under the Due
Process Clause as to whether those conditions amounted to
punishment."  Id. at 542.

Such circumstances of serious overcrowding in a county jail
were presented in Union County Jail Inmates v. DiBuono, 713 F.2d
984 (3d Cir. 1983).  There, the Third Circuit established a two-
part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are
> served by these conditions, and second, whether these
> conditions are rationally related to these purposes.  In
> assessing whether the conditions are reasonably related to
> the assigned purposes, we must further inquire as to whether
> these conditions "cause [inmates] to endure [such] genuine
> privations and hardship over an extended period of time,
> that the adverse conditions become excessive in relation to
> the purpose assigned to them."

713 F.2d at 992.

10

Here, plaintiff alleges that he was forced to endure overcrowded and unsanitary conditions at the CCCF, which required him to sleep on the floor at CCCF for several days.  The Court finds that, even if these allegations are true, there was no prolonged deprivation of a constitutional magnitude that would suggest that the conditions allegedly allowed to occur at CCCF by the named defendants were intended to punish plaintiff, or that such conditions were an exaggerated response to genuine security and administration considerations at the jail.  Thus, the Complaint does not assert a claim that rises to the level of a constitutional deprivation, and the Complaint will be dismissed without prejudice, in its entirety, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[3]

To the extent that plaintiff's claim should be examined under the Eighth Amendment, since he is a convicted prisoner, albeit, his conviction occurred in the State of Pennsylvania and

---

[3]  In the November 14, 2006 Opinion, this Court dismissed plaintiff's original Complaint without prejudice to plaintiff bringing a new action in the future, to the extent that he may be able to allege facts to show a combination of serious hardships or other deprivations of constitutional dimension that might constitute punishment without legitimate reason for a longer and more substantial period of time.  The allegations in this amended Complaint do not allege a combination of serious hardships that lasted for a substantial period of time.  In fact, the allegations span only two weeks more than the time period in the initial Complaint for a total of about two months time.  There is no denial of medical care because plaintiff was immediately treated for his alleged chest pains.  The only continuing hardship alleged is the overcrowded cell conditions, and this did not last for a substantial period of time.

is unrelated to the reason he was confined at CCCF, the allegations still would fail to state a cognizable claim.

The Eighth Amendment proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Id.</u> at 31.

To state a conditions-of-confinement claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Helling v. McKinney</u>, 509 U.S. at 32 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981)). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). Thus, an inmate may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of

12

life's necessities," such as adequate food, clothing, shelter,
sanitation, medical care, and personal safety. Rhodes, 452 U.S.
at 347-48. However, while the Eighth Amendment directs that
convicted prisoners not be subjected to cruel and unusual
punishment, "the Constitution does not mandate comfortable
prisons." Rhodes, 452 U.S. at 349. To the extent that certain
conditions are only "restrictive" or "harsh," they are merely
part of the penalty that criminal offenders pay for their
offenses against society. Id. at 347.

The subjective component requires that the state actor have
acted with "deliberate indifference," a state of mind equivalent
to a reckless disregard of a known risk of harm. See Farmer v.
Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303. An
inmate may fulfill the subjective element of such a claim by
demonstrating that prison officials knew of such substandard
conditions and "acted or failed to act with deliberate
indifference to a substantial risk of harm to inmate health or
safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, there are no allegations of deliberate indifference.
Plaintiff concedes that he was moved several times based on the
availability of space and cell bunks. When he presented a
request for medical care, he promptly received treatment. Given
these admitted facts showing an absence of deliberate
indifference, in conjunction with the short duration of the

13

alleged deprivations, this Court finds that the claims as alleged by plaintiff do not rise to the level of an Eighth Amendment violation.

Finally, it would appear that plaintiff may be alleging a claim that his confinement in disciplinary lock-up violated due process. For a convicted prisoner like Abbott, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court of law." Id. Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Sandin, 515 U.S. at 480. Here, Abbott's disciplinary segregation for two days did not trigger the protections of the Due Process Clause. See Sandin, 515 U.S. at 484-486.

Abbott also appears to suggest that the basis for the disciplinary charges was to punish him in retaliation for complaining about the overcrowded conditions of his confinement, even though he refused to comply with direct orders regarding his

cell assignment.  In other words, Abbott may be asserting that the charges against him are false.  The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff, 418 U.S. at 558, then the prisoner has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided).

Here, Abbott admits that he was given a disciplinary hearing, and does not complain about the hearing process itself. Thus, absent an allegation that he was denied a meaningful opportunity to contest the charges at a disciplinary hearing, any claim by Abbott based on allegedly false disciplinary charges is

not cognizable under § 1983.[4]  Accordingly, this claim will be
dismissed, as against all defendants for failure to state a claim
pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).


V.  <u>CONCLUSION</u>

Therefore, for the reasons set forth above, this action will
be re-opened to allow plaintiff to file his amended Complaint,
and the amended Complaint will be dismissed with prejudice
against the new defendants, for failure to state a claim at this

---

[4]  To the extent plaintiff is alleging a claim of
retaliation as to the bringing of false disciplinary charges, his
claim still fails.  "Retaliation for the exercise of
constitutionally protected rights is itself a violation of rights
secured by the Constitution ... ."  <u>White v. Napoleon</u>, 897 F.2d
103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim,
plaintiff must demonstrate that (1) he engaged in
constitutionally-protected activity; (2) he suffered, at the
hands of a state actor, adverse action "sufficient to deter a
person of ordinary firmness from exercising his [constitutional]
rights;" and (3) the protected activity was a substantial or
motivating factor in the state actor's decision to take adverse
action.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001)
(quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).
<u>See also</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 160 (3d Cir. 1997)
(citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429
U.S. 274 (1977)); <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 386-99
(6th Cir. 1999), <u>cited with approval in</u> <u>Allah</u>, 229 F.3d at 225.
Here, the motivating factor for bringing disciplinary charges
against Abbott was his refusal to comply with a cell assignment
order.  Plaintiff's disciplinary action thus does not constitute
a constitutionally-protected activity.  Moreover, the
disciplinary lock-up did not deter plaintiff from filing
grievances.  Therefore, any retaliation claim will be dismissed
for failure to state a claim.

time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

An appropriate order follows.


s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: December 11, 2006

17